```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

TAYLOR CHRYSLER DODGE, INC.,

        Plaintiff,

    v.

UNIVERSAL UNDERWRITERS
INSURANCE COMPANY,

        Defendant.

Case No. 08 C 4522

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Cross-Motions for Summary Judgment in Plaintiff's suit for declaratory judgment. For the following reasons, the Defendant's Motion is **DENIED**. The Plaintiff's Motion is **GRANTED** in part and **DENIED** in part, as explained below.

### I. BACKGROUND

#### A. Fraudulent Sales at Taylor Chrysler Dodge, Inc.

Plaintiff Taylor Chrysler Dodge, Inc. (hereinafter, "Taylor"), an automobile dealership located in Kankakee, Illinois, is in the business of selling new and used vehicles. Pl.'s Statement of Facts ("Pl.'s SOF") ¶¶ 1, 6. To facilitate these sales, Taylor has agreements with several lending institutions, including Fifth Third Bank ("Fifth Third"), that provide the option of financing to customers. Def.'s Statement of Facts ("Def.'s SOF") ¶ 5.

The current action arises out of Taylor's insurance claim for financial liabilities resulting from the dishonest activities of its

former employee, Kendall Gardner ("Gardner"). Gardner worked for Taylor as a salesperson from September 2006 until March 2007. Pl.'s SOF ¶ 15. During that time, unbeknownst to his employer, Gardner identified customers whom he knew or suspected had poor credit histories and could not obtain legitimate financing through Fifth Third. Pl.'s SOF ¶ 36. In exchange for cash payments, Gardner obtained false documents and identification, including Social Security numbers, diplomas, and employment documentation, and used these documents to assist fifteen customers in obtaining financing from Fifth Third for the purchase of cars. Pl.'s SOF ¶ 37. Fifth Third financed these cars for approximately $370,428. Pl.'s SOF ¶ 17. At the time of purchase, Taylor was paid in full by each customer and by Fifth Third. Pl.'s SOF ¶ 18.

On April 2, 2007, the United States Secret Service notified Taylor that it was investigating Gardner for identity theft during his prior employment at another dealership. Pl.'s SOF ¶ 21; Def.'s SOF ¶ 19. Upon request, Taylor supplied the Secret Service with information regarding Gardner's transactions at Taylor. During the next few weeks, Taylor learned that Gardner had assisted fifteen customers in financing the purchase of cars from Taylor by submitting fraudulent information. Def.'s SOF ¶¶ 20, 22; Pl.'s SOF ¶ 23.

In June and July 2007, after the circumstances regarding Gardner's misconduct at Taylor came to light, Fifth Third and the Illinois State Police seized and repossessed the fifteen cars, and Fifth Third released the cars to Taylor for the purpose of sale at an

auction in order to recover the fraud loss. Pl.'s SOF ¶¶ 25; Def.'s SOF ¶ 24. In August 2007, Taylor agreed to pay the proceeds that it would receive from the auction to Fifth Third to be applied to the outstanding loan balance, which totaled $370,428. Pl.'s SOF ¶¶ 17,27-29. On August 15, 2007, Taylor sold twelve of the cars at the auction, and the remaining three cars were sold afterwards. Pl.'s SOF ¶ 28. Sales of the fifteen cars totaled approximately $197,367. Def.'s SOF ¶ 26. Taylor paid the remainder of the loan balance, approximately $173,061, to Fifth Third, in three installments. Def.'s SOF ¶ 27.

**B. The Insurance Policy**

During the relevant time period, Taylor was covered by a UNICOVER insurance policy (the "Policy") issued by Defendant Universal Underwriters Insurance Company (hereinafter, "Universal"). Pl.'s SOF ¶ 7; Def.'s SOF Ex. F. The Policy, described in further detail below, includes coverage for certain losses resulting from certain acts of employee dishonesty, including theft and forgery.

On April 27, 2007, Taylor informed Universal of a potential employee dishonesty claim under the Policy related to Gardner's fraudulent sales. Pl.'s SOF ¶ 23. On May 24, 2007, Universal sent Taylor a letter providing certain information and procedures regarding the potential claim and discussing the "Proof of Loss" form that Taylor would have to fill out to substantiate its claim. Pl.'s SOF ¶ 24. The letter discussed Taylor's "duties after loss" and advised Taylor that, "Material documents supporting your claim should

be attached to your Proof of Loss form. Your documentation should substantiate all available facts material to your claim as well as the amount of loss sustained." Pl.'s SOF, Tab 1, Ex. A. In a letter dated August 3, 2007, Universal reminded Taylor that it had not yet received the Proof of Loss and other documents required to proceed with handling the claim. Def.'s SOF ¶ 32.

On August 30, 2007, Taylor submitted to Universal the Proof of Loss form, which provided details regarding the sales of the fifteen cars and the total amount of the loss. Pl.'s SOF ¶ 32. In a written notice dated October 1, 2007, Universal denied coverage to Taylor for its claim. Universal explained that it could not conclude that Taylor had sustained a loss due to employee "theft" as defined in the Policy. Pl.'s SOF ¶ 33; Def.'s SOF ¶ 35. Universal affirmed its decision on May 27, 2008. Pl.'s SOF ¶ 42. On August 13, 2008, Taylor filed its Complaint in this case, obligations with regard to acts of employee dishonesty:

EMPLOYEE DISHONESTY

1. EMPLOYEE THEFT OR FORGERY.

   We will pay for loss resulting from theft or forgery committed by an employee, whether identified or not.

2. VICARIOUS LIABILITY.

   We will pay for loss sustained by a third party and resulting directly from theft or forgery by your employee, for which loss you are held legally liable.

Pl.'s SOF ¶ 9; Def.'s SOF Ex. F. "Theft" is defined as "the unlawful taking of money, securities or other property to the deprivation of the insured." Pl.'s SOF ¶ 9; Def.'s SOF Ex. F.

In regard to "Vicarious Liability" under "Employee Dishonesty," "theft" is defined as "an employee unlawfully taking money, securities or other property to the deprivation of someone other than [the insured]." Def.'s SOF, Ex. F, Extension 320, at 2.

The Policy defines "loss" as:

> [L]oss of or damage to the property described in the Insuring Agreement during the Coverage Part period from the causes described in the Insuring Agreement.

Def.'s SOF Ex. F, at 34.

The Policy instructs the insured regarding its "duties after loss," including, in relevant part:

> YOUR DUTIES AFTER LOSS – When you learn of or discover a loss, or what you believe to be a loss, you must:
>
> (a) notify us as soon as possible;
>
> (b) submit a detailed sworn proof of loss to us, fully documenting your claim, within four months of the discovery of the loss.

Def.'s SOF Ex. F, at 38.

Finally, the Policy prohibits bringing legal actions against Universal to recover under the Policy "unless [the insured party has] complied with all of its terms." Def.'s SOF Ex. F, at 6. Any legal action for loss to property "must be brought within 12 months from the date [the insured party] discover[s] the loss. . . ." Def.'s SOF Ex. F, at 6. The Illinois State Amendatory Part, UNICOVER V, extends

this twelve-month period "by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part." Pl.'s SOF ¶ 14.

### C. Contested Issues

Universal argues that it is entitled to summary judgment for three reasons. First, Gardner's fraudulent actions do not fall within the Policy's coverage because they do not constitute "theft." Second, the insurance claim is time-barred. Third, coverage is precluded because Taylor breached the Policy by paying Fifth Third without first obtaining Universal's consent. Taylor disputes each of these theories and argues that it is entitled to summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's role when ruling on a motion for summary judgment is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue of material fact that warrants trial. *Id.* at 249. In making this determination, the court must view all the evidence and draw any reasonable inferences

therefrom in the light most favorable to the nonmoving party. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir., 2000). When ruling on cross-motions for summary judgment, the court evaluates each party's motion separately and on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Patrick Schaumburg Automobiles, Inc. v. Hanover Ins. Co.,* 452 F.Supp.2d 857, 866 (N.D.Ill., 2006). If neither party demonstrates that there is no genuine issue as to any material fact, neither party is entitled to summary judgment. *Id.*

### III. **DISCUSSION**

**A. Interpretation of Insurance Policies under Illinois Law**

"[T]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co.,* 51 F.3d 1336, 1342 (7th Cir., 1995). The court's objective when interpreting the terms of an insurance policy, which is a contractual agreement, is to determine the intent of the parties. *Wood v. Allstate Ins. Co.,* 21 F.3d 741, 743 (7th Cir., 1994).

Under Illinois law, a court initially must look only at the relevant language of a policy, "as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Metro Federal Credit Union v. Federal Ins. Co.*, 607 F.Supp.2d 870,

874 (N.D.Ill., 2009) (citing *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill., 2007)). If the language is subject to only one reasonable interpretation, a court applies the terms as written. *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 361 (7th Cir., 1987). If, however, the relevant language is ambiguous, the terms are liberally construed in favor of coverage and against the insurer who drafted the policy. *Id.; Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). Contractual terms in a policy are "ambiguous if they are reasonably susceptible to more than one meaning, but contract language is not rendered ambiguous merely because the parties do not agree upon its meaning." *Proin S.A. v. LaSalle Bank, N.A.,* 223 F.Supp.2d 960, 967 (N.D.Ill., 2002). The insurer has the burden to affirmatively demonstrate the applicability of an exclusion. *DeVore v. American Family Mut. Ins. Co.*, 891 N.E.2d 505, 508 (Ill.App.Ct., 2008).

**B. Issues in Motions for Summary Judgment**

***1. Whether Gardner's Conduct Is Covered under the Policy***

The question of whether Gardner's misconduct constituted "theft" as defined by the Policy can be answered by consulting its plain language, which contains definitions of "theft" under "Employee Dishonesty": "the unlawful taking of money, securities or other property to the deprivation of the insured," or, as it relates to vicarious liability, "an employee unlawfully taking money, securities

or other property to the deprivation of someone other than [the insured]."

Under either definition, Gardner's acts constitute theft. Gardner aided and abetted others in a fraudulent ("unlawful") taking of cars from Taylor and a fraudulent taking of funds from Fifth Third, resulting in the deprivation to Taylor of over $170,000, which it was obliged to pay to Fifth Third. While the financial loss to Taylor did not occur immediately after the taking, the plain words of the Policy do not require immediacy. As to whether Gardner committed theft, the Court agrees with Taylor that he did. *See also People v. Strickland*, 609 N.E.2d 1366, 1382 (Ill., 1992) (holding that for a "taking" to occur, victim must part with possession or custody of the property).

Gardner's misconduct can be viewed in two different ways: (1) as theft against Taylor, by which Gardner aided and abetted the fraudulent taking of automobiles, or (2) as theft against Fifth Third, by which Gardner aided and abetted the fraudulent receipt of funds from Fifth Third. The Policy guarantees to pay Taylor for any loss of property "resulting directly from any fraudulent or dishonest act or acts committed by an employee" *and also* for "loss sustained by a third party resulting directly from theft . . . by [Taylor's] employee for which [Taylor is] held legally liable." The second definition, which relates to "vicarious liability," accurately describes the situation involving Taylor, Gardner, and Fifth Third.

Thus, Taylor's loss is covered, regardless of whether it is considered direct or vicarious.

Furthermore, the Policy does not require that property be owned or possessed by Taylor in order to be covered, as the Policy covers property for which Taylor is "legally liable for loss." Therefore, as long as Taylor was legally liable for the monies lost by Fifth Third, those funds are covered by the Policy.

Universal's arguments that Gardner's actions are not covered by the Policy are belied by the Policy's plain language. Taylor had every right to expect Universal to pay for losses caused by Gardner. The two unpublished cases cited by Universal in support of its interpretation are not on point. Universal offers no reasonable interpretation that would deny coverage to Universal.

Finding no genuine issue of material fact as to Gardner's misconduct and finding that Taylor is entitled to judgment as a matter of law, the Court grants partial summary judgment to Taylor on the issue of whether Gardner's actions are covered under the Policy.

### *2. Whether Taylor's Claim is Time-Barred*

Next, Universal argues that it is entitled to summary judgment because Taylor did not abide by the Policy provisions detailing an insured's duties after a loss. Under the Policy, Taylor was required to submit a sworn Proof of Loss to Universal, documenting its claim, within four months of the "discovery" of the loss. Furthermore, the Policy prohibits Taylor from bringing a legal action against Universal to recover under the Policy unless the action is brought

within twelve months from the date the loss is discovered. Universal claims that Taylor submitted its Proof of Loss claim after the four-month window expired and that Taylor is time-barred from bringing the instant action because suit was filed after the twelve-month window lapsed. In response, Taylor contends that it timely submitted its Proof of Loss approximately fifteen days after it discovered its loss and filed the instant action in accordance with the terms of the Policy.

This issue turns on when Taylor is considered to have "discovered" the loss. If Universal is correct that Taylor discovered the loss when it first learned of Gardner's fraudulent activities, then the claim is time-barred. Conversely, if Taylor is correct that it discovered the loss when it learned how much it would have to pay to Fifth Third, Taylor acted in a timely fashion, both as to the filing of the claim and the filing of this lawsuit.

According to Universal, the discovery of the loss occurred when Taylor became aware that Gardner had assisted in the fraudulent taking of fifteen of Taylor's vehicles, that is, in April 2007. Taylor, on the other hand, argues that it did not discover the loss until August 15, 2007, after it had recovered and sold the cars in question and Fifth Third demanded that Taylor repurchase the loans. Taylor initially notified Universal of its potential claim on April 27, 2007, but, at that time, it argues, it did not have sufficient facts to discern whether it had incurred a loss. Taylor argues that this communication only served to report its "mere suspicions" of a

possible loss.  In response to this report, Universal sent a letter to Taylor advising Taylor on how to file a Proof of Loss claim.  The letter demanded a high level of specificity, plus substantial documentation, for a Proof of Loss claim.

Universal cites many cases to support its argument, but very little that is on point or controlling.  Most of the cases cited by Universal do not approach the unusual fact pattern here, where it is not the insured's own loss, but that of a third party, that must be determined.  Furthermore, many of the cases merely discuss when an insured must give "notice," not when it must present a detailed, documented proof of loss claim.  There is no dispute that Taylor gave timely notice of Gardner's fraud; the issue is whether its Proof of Loss claim was timely.

Additionally, there are conflicts among jurisdictions regarding how to define "discovery of loss," which may occur, according to various definitions, (1) when the insured discovers facts giving rise to a later claim, (2) when a claim is made against an insured that may result in a judgment, or (3) when a claim or judgment is settled.  *Pacific-Southern Mortgage Trust Co. v. Insurance Co. of North America*, 166 Cal.App.3d 703, 709 (Cal.App.Ct., 1985).  Moreover, in a case of a secured loan based on false representations, as occurred here, the loss may occur much later than the fraud, or not at all.  *See id.* at 710.  Because the Policy here provides indemnity against *actual loss*, it is logical to start the running of the Policy's

limitation period on discovery of actual loss, not discovery of anticipated loss.  *See id.* at 711-12.

One of the few Illinois cases cited by Universal on this issue is *Western Cold Storage Co. v. New Amsterdam Cas. Co.*, 262 Ill.App. 133 (Ill.App.Ct., 1931), but that case hurts Universal more than it helps.  Universal cites that case for the well-settled proposition that an insured is obliged to give notice of a loss only when he knows of a specific act of fraud that might give rise to a loss.  *Id.* at 135.  But the court in *Western Cold Storage* went on to say that determining timeliness is a factual question and that exclusionary conditions are not as strictly construed as those involving the substance of the agreement.  Id.

Universal's argument would seem to leave Taylor in a  "Catch-22" situation where no amount of diligence would have sufficed to allow coverage.  It appears that Taylor could not have filed the kind of detailed, documented Proof of Loss claim that Universal required until the cars had been sold at auction and it could be determined whether a loss had occurred.  The time gap between the discovery of the fraud and the determination of the loss depended on many factors outside Taylor's control, such as the investigation by the Secret Service and the recovery of the cars by the Illinois State Police.  The alleged facts do not suggest that Taylor was negligent or dilatory in determining its loss.  Accordingly, the Court finds that the timeliness of Taylor's claim is a question for the trier of fact.

See *id*. Therefore, the Court denies partial summary judgment to both parties on this issue.

### *3. Whether Taylor Breached the Terms of the Policy by Making Payments to Fifth Third without Universal's Consent*

Finally, Universal argues that it is entitled to summary judgment because Taylor violated the Policy by failing to seek its consent before reimbursing Fifth Third for the fraudulent loan payments. Taylor contends that it did not violate the Policy because it was contractually and legally obligated to pay Fifth Third as required under its Dealer Financing Agreement.

The Policy states that Taylor shall not "assume any obligation, make any offer or payment, or incur any expenses without [Universal's] consent, except at [Taylor's] own cost." The Policy further prohibits anyone from "bring[ing] legal action against [Universal] for any reason, to recover under this policy, unless they have complied with all of its terms." Here, the parties do not dispute that Taylor paid to Fifth Third the proceeds from the auction and the sale of the fifteen cars, totaling about $197,367. Further, it is undisputed that Taylor then paid Fifth Third the remaining balance of the fraudulent loans in the amount of approximately $173,061. Taylor does not dispute the fact that it never sought Universal's consent before auctioning and selling the cars or making the payments to Fifth Third. Taylor argues, however, that its payments to Fifth Third in excess of $370,000 did not constitute an

assumption of any obligation or an unauthorized settlement that would prevent insurance coverage.

The Court finds that Universal has failed in its burden to demonstrate that Taylor has breached its duties under the Policy so as to preclude coverage. The cases cited by Universal are not entirely on point because they refer to settlements of pending litigation, not fulfillment of a pre-existing contract, as existed here between Taylor and Fifth Third. It is questionable whether the exclusionary clause can reasonably be applied where an insured has no choice but to make such a payment. This issue thus presents a question for the trier of fact as to whether Taylor had any choice in the matter of its payment to Fifth Third. Therefore, summary judgment for either party on this issue would be inappropriate at this time.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Universal's Motion for Summary Judgment is **DENIED**. Taylor's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 9/30/2009